Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,127-JAC

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA
IN THE INTEREST OF
L.D.
Y.D.

* * * * *

Appealed from the
Caddo Parish Juvenile Court
Parish of Caddo, Louisiana
Trial Court No. 167,447J

Honorable David N. Matlock, Judge

* * * * *

JAMES E. STEWART, SR.                          Counsel for Appellant,
District Attorney                                       State of Louisiana

TOMMY J. JOHNSON
SUZANNE MORELOCK ELLIS
HELEN M. MARRS
Assistant District Attorneys

CHILD ADVOCACY PROGRAM                 Counsel for Appellees,
By:  Dana M. Rausch                              L.D. and Y.D., Children

INDIGENT DEFENDER OFFICE               Counsel for Appellee,
By:  George E. Harp                               S.D., Mother

CINC APPELLATE PROJECT
By:  Douglas Lee Harville

INDIGENT DEFENDER OFFICE               Counsel for Appellees,
By:  Joshua K. Williams                          M.P. and K.B., Fathers

* * * * *

Before PITMAN, THOMPSON, and ELLENDER, JJ.

**PITMAN, C. J.**

The State of Louisiana appeals the juvenile court's denial of its petition to adjudicate L.D. and Y.D. as children in need of care. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

## FACTS

On July 11, 2022, the Department of Children and Family Services ("DCFS") received a report of neglect and lack of adequate supervision regarding L.D. (whose date of birth is December 13, 2021) and Y.D. (whose date of birth is November 8, 2019) by their mother S.D. On September 8, 2022, the juvenile court issued an instanter order and placed L.D. and Y.D. in the custody of the DCFS.

At a continued custody hearing on September 12, 2022, several DCFS employees testified. At the conclusion of the hearing, the juvenile court found that the children were in need of care and should remain in the custody of the DCFS.

On October 10, 2022, the state filed a petition and requested that L.D. and Y.D. be adjudicated children in need of care.

An adjudication hearing was held on December 12, 2022. Tamika Johnson Smith, a child welfare supervisor at the DCFS, testified that the DCFS attempted to contact S.D. at several addresses and eventually made contact with her, L.D. and Y.D. on September 8, 2022, at the LSU Women's and Children's Clinic. When she explained to S.D. that the DCFS was there to remove her children from her custody, S.D. was emotional, hit the door and screamed. S.D. could not provide a current or previous address and lied about the location of the children. S.D., who was pregnant, declined a drug

screen and stated she would test positive for marijuana. S.D. stated that she had depression but was not receiving any treatment for it and later stated that she did not have a mental health diagnosis. Smith noted that L.D. had not been seen by a doctor since her birth and had not been immunized. L.D. and Y.D. were drug screened. Smith noted that the children were clean and well-groomed. She stated that if the children returned to their mother's custody, the DCFS would want S.D. to be treated for her mental illness and provide stable housing.

S.D. testified that she is the mother of L.D. and Y.D. She described her housing situation and stated that she previously lived with her sister and then her mother but now has her own three-bedroom house. She noted that she was employed in the kitchen at LSU Hospital. She receives EBT from the state and there is food in the cabinets and refrigerator. She explained that the DCFS received reports that she was not feeding her children because a cousin wanted custody of L.D. S.D. admitted to smoking marijuana prior to becoming pregnant in August but said she did not use any other drugs or take pills. She was aware her children had been drug screened and that they tested positive. She assumed the positive results for cocaine and methamphetamine were because the children stayed with a godmother who might have used drugs. She stated she did not have a mental health diagnosis and did not think she had an undiagnosed illness. She acknowledged that her children had not been receiving medical care because she did not have a car and did not use the free transportation available with Medicaid. She further stated that her oldest child was adopted and that another child lives with his father. She testified that in December 2021, someone from the DCFS came to the hospital when L.D. was born because

the child tested positive for marijuana. The DCFS did not contact her again until people complained about her.

Lakisha Cooper, a child welfare supervisor for foster care with the DCFS, testified that she was the caseworker assigned to S.D. when her parental rights were terminated regarding her oldest child. She explained that S.D. was not compliant with her case plan, which included mental health, substance abuse, a legal source of income, parental contributions and visitation.

M.P., L.D.'s father, testified that he was not aware of where his daughter was staying because he was incarcerated. He was not aware that S.D. had any mental health issues but did know that she used marijuana.

The juvenile court determined that the evidence in this case did not warrant an adjudication. It explained that the quality of the proof with respect to the substance testing of the children was "just not there." It told S.D. not to smoke marijuana around the children and that the children needed to receive medical care.

On January 3, 2023, the juvenile court signed a judgment denying the petition to adjudicate the children as children in need of care.

The state appeals.

## DISCUSSION

In its first assignment of error, the state argues that the juvenile court committed manifest error when it denied the petition to declare that L.D. and Y.D. were children in need of care. In its second assignment of error, the state argues that the juvenile court failed to consider that S.D.'s patterns of neglect regarding substance abuse, stable housing, the children's medical care and avoidance of contact with the DCFS were all grounds for granting

3

the state's petition. It contends it demonstrated that the children were at a substantial risk of harm and met its burden of proof by a preponderance of the evidence that the children were in need of care.

S.D. argues that the juvenile court did not err when it found that the state failed to carry its substantial burden of proof required to find that L.D. and Y.D. were children in need of care. She notes that the DCFS based its case on uncorroborated reports of her alleged neglect of L.D. and Y.D. She contends that the state did not show that any behavior by her constituted abuse or neglect. She also argues that the state did not establish that L.D. or Y.D. had suffered or would suffer any mental, physical, emotional or other injuries in her custody. She states that the evidence showed that L.D. and Y.D. had adequate and safe shelter, were clean and well-groomed and had adequate food.

Title VI of the Louisiana Children's Code, i.e., La. Ch. C. arts. 601 to 725.6, sets forth the statutes regarding children in need of care. La. Ch. C. art. 601 states that the purpose of this Title is:

> to protect children whose physical or mental health, welfare, and safety is substantially at risk of harm by physical abuse, neglect, or exploitation and who may be further threatened by the conduct of others, by providing for the reporting of suspected cases of abuse, exploitation, or neglect of children; by providing for the investigation of complaints; and by providing, if necessary, for the resolution of child in need of care proceedings in the courts.

La. Ch. C. art. 601 adds that "[t]he health, welfare, safety, and best interest of the child shall be the paramount concern in all proceedings pursuant to this Title."

A child-in-need-of-care proceeding shall be commenced by petition filed by the district attorney. La. Ch. C. art. 631(A). The DCFS, when

4

authorized by the court, may file a petition if there are reasonable grounds to believe that the child is a child in need of care. *Id.* An adjudication hearing shall be held in which the state has the burden to prove the allegations of the petition by a preponderance of evidence. La. Ch. C. arts. 664 and 665. It is not the duty of the state or the DCFS to prove its case beyond a reasonable doubt, by clear and convincing evidence or to disprove every hypothesis of innocence. *State in Int. of H.J.*, 53,299 (La. App. 2 Cir. 3/4/20), 293 So. 3d 97.

Appellate courts review child-in-need-of-care rulings under the manifest error standard of review. *Id.*

Considering the evidence presented at the adjudication hearing, we find that the juvenile court committed manifest error when it determined that L.D. and Y.D. were not children in need of care. The health, welfare, safety and best interest of the children are the paramount concerns in this case; and, therefore, we find that the consistent lack of medical care of the children necessitates reversal of the ruling of the juvenile court and remand for further proceedings. As demonstrated in the testimony of Smith and S.D., L.D. and Y.D. had not been receiving medical care, including immunizations. S.D. admitted that she had not used the free transportation available through Medicaid to bring her children to the doctor. The state proved by a preponderance of the evidence that S.D.'s neglect in obtaining consistent medical care for her children is a risk to their physical health and welfare. Accordingly, the juvenile court should have adjudicated L.D. and Y.D. as children in need of care so that the state, through the DCFS, could intervene and create a case plan that educates S.D. and protects the health and welfare of the children.

We note the juvenile court's concern with the strength of the state's evidence regarding S.D.'s drug use and agree that the state failed to support its argument with available evidence. At the adjudication hearing, the state presented only testimony; it did not introduce any additional evidence. Although the testimony of S.D. that she smoked marijuana and that her children tested positive in drug screens might be sufficient to prove the state's case by a preponderance of the evidence, the state could have supported this testimony with additional evidence, including lab reports showing the results of the drug screens. Such documentary evidence would have strengthened the state's case before the juvenile court. In order to protect children whose physical or mental health, welfare and safety are substantially at risk of harm, the state shall present the available relevant evidence in order to prove by a preponderance of the evidence that the children are in need of care.

Accordingly, this assignment of error has merit.

### CONCLUSION

For the foregoing reasons, we reverse the judgment of the juvenile court denying the State of Louisiana's petition to adjudicate L.D. and Y.D. as children in need of care and remand for further proceedings. Costs of this appeal are assessed to S.D.

**REVERSED; REMANDED.**